Parking, LLC v. ParkMe, Inc. I'm here on behalf of Open Parking, whose patents were filed in September of 1999 and describe, enable, and claim specific, narrowly drawn, and unconventional technological improvements over the prior part of computerized parking systems at that time. The invention we're talking about today is a real-time, open parking mobile app that combines an unconventional and non-generic wireless communication device and a new, unconventional and non-generic and specific software application for receiving parking data over the internet, rendering a real-time presentation of that parking data into one or more available parking lots, indicating their changing occupancy status based upon the presence or absence of vacant parking spaces on a mobile device. It is a substantial improvement over prior-art computer-based parking systems, and it solved a technological problem. The problem was how to send real-time parking lot vacancy data to commuters before they got to the parking lot, before they actually had to drive to the parking lot. How does Claim 1 solve that problem? How does Claim 1 demonstrate a huge technological advance on how to send data to commuters at the parking lot? Because that's what you just said. So what limitation in Claim 1 demonstrates to me how that huge technological innovation is achieved? It's the software application for receiving parking data, which is then transmitted over the internet, wireless communications, to the device that is presumably being... But this just covers a software application, not a particular software application. No, it is a particular software application, Your Honor. We tried to present to Judge Hornak the definition of an application. It is a piece of a program that does a specific job. So are you saying it's limited to a specific program, which means if somebody else writes a program that uses different code or maybe even written in a different language, it wouldn't infringe? No, I don't say that it would be written in different code. I think it would have to do something different that doesn't do what we do. I guess you're saying this is a unique application because it's communicating parking lot data as opposed to whether there are open tables at a restaurant or what the weather is like down the street or how much candy is still available at the 7-Eleven. I mean, those would be all different software applications. Well, they might be, Your Honor, but we don't know what was ubiquitous, generic at the time. We are not applying, nor do we represent that we are applying technology, this new technology to existing longstanding business practices just to make it apply to the parking lot circumstance. We don't think that this kind of application existed in 1999 for parking or for anything else. At least there's not been any evidence of it. So we're not saying that. We believe this to have been new technology that existed at the time because wireless devices in 1999 were new technology and no one had been using them and certainly no one had used them. I guess to follow up, what if in 1999 some other inventor had filed a patent application for a software app to tell you about the availability of tables at various restaurants in the downtown Washington, D.C. area? Would that have been prior to our app, a priority date prior to ours? I'm just saying it's the same time. And so now we're only talking about eligibility. We're not talking about anticipation or obviousness, but the claim is basically the same. We have a system and we have a server and we have an app and we have a handheld wireless device and there's a communication of information in real time as to whether there are tables at my favorite Chinese restaurants in downtown Washington, D.C. Would that be patent eligible? I don't know. I think if it was new, it's possible, but I don't believe that we can make that decision now. We don't know whether what they did was new or how they did it. We have a new piece of software in our case that was never written before and that does something to this piece of... There's no piece of software disclosed in this patent. There's nothing but functional claiming and a few flowcharts that literally have three elements in them, communicate, send, receive. I mean, there's no software here. I have a degree in electrical engineering and computer software. This is a flowchart that is nothing but functional claiming. This isn't software. No, this patent was approved by the patent office and considered enabled, I think, at the time... In a time long ago when the law was different and you're stuck with the present state of the law, I don't see how these claims are distinguishable from, I could probably name 20 other cases, all of which, by the way, many of those patents were filed in the 90s when it was even more clear you could get software patents than now. Well, we're not asking for a software patent. We're asking for a system that combines two different pieces of new technology, a communication device that did not exist before, that was not well understood, not well known... A communication device? You just say a wireless communication device and in the patent there is no specificity added to that. The wireless communication device, Yaron, in our patent specification is identified as a handheld or smartphone. And you invented those? I'm sorry? Did you invent those? We did not invent the smartphone. We are using... The smartphone becomes a part of this system which operates in conjunction with the new patent software, the new software that basically tells this new piece of computer what to do with regard to creating, modifying data that comes into it, modifies that data into a map or some other visual changing tool and tells the driver... Makes it much more efficient than if you had somebody on site watching the parking lot and counting the empty spaces and then calling on the telephone and telling people. That was the old way to do it. That may have been the old business practice. That was not the business practice that we were using here. We're not creating a patent that deals with old technology and just adding a computer to it. An old business practice. This was never done before. It is much more efficient. Every single one of these cases has a new business method. New business method, which is what you have here. And every one of these cases failed. Look, nobody fought against Alice more than me. I got umpteen decisions fighting against all of that and I lost. At some point, I got to tell you, somebody's going to bring a case like this and we're going to sanction them for a frivolous appeal in light of the state of the law. Your Honor... Because at some point, I understand. Your client lost property rights that he secured long ago when the state of the law was different. So I understand why he wants to fight to the death to preserve them. But there's nothing in this case that distinguishes it. This is one of the least strong cases I've seen in a long time to be complaining about the 101 ruling in light of the current state of our law, which I am bound by. Your Honor, I don't... You've got to be careful. I don't think this is anything like Alice. Alice, you had a whole bunch of information that was old practices, old business practices, and all you did with Alice was to add a generic piece of computer software. This is nothing like that whatsoever. This is a new piece of specifically designed software that is connected with a new kind of computer that at the time, as we said, was not well known, it was not generic, and it was able to do something it had never done before and it had a great improvement on the technology. It solved a very, very significant problem. You could drive in your car, you could look at the display, and you could see where you should waste time driving to and where you shouldn't. You saved time, you saved gas. It was a very, very significant improvement over the technology at the time. Does the fact that it's new make it necessarily non-abstract? No, not necessarily, but I think... Isn't that, in essence, what you're arguing? No, what I'm arguing is that you would have to take a look at the claims and we think that when you take a look at the claims, you would see, in terms of abstractness, that this is a concrete problem solver. It's not the abstract, quote, looking for parking, which is what ParkMe and the judge apparently wanted to tag us with. This is collecting and disseminating information about parking. That's what the system does. It does it in a new way, with new technology, and to solve a new problem. But it is not abstract in our view. If you do not want to get us to the non-abstract determination, then we would argue that this is an inventive concept that turned an abstract idea into an eligible, patented... Right, but you have to get over the step one hurdle. Well, I'm trying. Judge Moore doesn't seem to think that I would get over step one, but we believe that this is an inventive concept that greatly... Let me just make certain I understand. So are you essentially making a step two argument here? I'm willing to make them. They overlap. I believe they overlap. The court, I think, in a step one, looks at the patent claims to determine whether or not it can get by abstractness. So we're asking the court, in terms of step one, to look at what the focus of the claim is and determine whether or not the focus is concrete enough. We think it is, but we are willing to also argue, if we have to, that this patent, that this invention was inventive. It was certainly inventive. I think even Judge Hornak thought it was a terrific idea. It's a cool idea. It solved the problem that people had and it solved it in a new way, using non-generic piece of computer equipment which did not exist before the date of the patent. It was not used for this way and at least there's no evidence of that. And it used a specific piece of software which is described in the patent, an application to do a very specific thing. That's what applications do. That would have been one of the definitions of an application that we would have presented to Judge Hornak at the time if he wanted to consider our claim constructions. But you certainly didn't invent the wireless communication device that's capable of assessing the air, right? The point of novelty is not on the wireless communication device. The point of novelty in our view is the combination of the two. The wireless communication device had not been used, in our understanding, for this before. This would have been the first time not only that it was used for parking but would have been used for anything. That is to create a real-time representation of information that somebody could look at and use. There's no evidence that that existed before and we don't think it did. This is not the use of a generic computer. It's not the use of an off-the-shelf piece of computer software. This was a very inventive concept at the time that my client recognized because he was going through the problem every day. And it helps people. It is not... You don't go to the lot anymore. You don't have to go to the lot anymore. That was the old way people did it. And to keep you from going to the lot and being able to decide whether you're going to turn right whether you're going to turn left and which lot you're going to go to that was, I thought, pretty inventive at the time and it was certainly a great advance over the parking technology that existed. So I'm happy to make either argument based upon a review. We're looking at inventiveness for step two. We think this is a great, a very, very great step in inventiveness for this kind of program. Thank you. Okay, we'll save the remainder of your time for rebuttal. Mr. McBrayer. Thank you, Your Honor. May I please support Ryan McBrayer for the appellant Parkme or Pelly Parkme, excuse me. I'll be brief and willing to answer whatever questions the court has but there are just a number of simple ways the court can and should decide this as a plain vanilla Alice case. What the court has just heard is a long recitation of why this is inventive as if the court should entertain a 102 or 103 style inquiry and that's not the case here. What we're dealing with is a long-standing human practice that neither side disputes as a long-standing human practice namely the effort to get information about open parking spaces to which the patentee added a generic computer a generic application which is recited in the patent only as Internet Explorer or Word. But this is a valuable invention. Like I look at stuff like this and I think I'm glad somebody did this. This makes my life a little easier. It's kind of like when you pull into Tyson's Corner which is near here and they got the little red light or green light and you can look down the road you don't have to drive down the road anymore to see if there are vacant or full spots because there's little lights at the top so you can just look down the whole row 50 cars and you know if there's an empty spot. This is a valuable invention. Why shouldn't this be patent eligible? Your Honor, it raises the efficiency point and I was going to comment on Judge Klovenger's question too It might make life more efficient. It does not make the technology more efficient. And all of this court's decisions that have found patentability What was the state of the technology before this? When you say it doesn't make the technology more efficient I'm not sure that's right. I think the state of identifying where open spots are was less efficient before this. What were the manners by which that was accomplished? Somebody standing there and points you there's a spot or those lights I just described still requires me to go to the row and look down. How does this not make it more efficient? You've got an app on your phone that says there's a vacant spot on level 3, row 2 That seems more efficient. It makes life more efficient But none of this court's cases have allowed a patent of this sort through the ALICE screen merely by making life more efficient This court has said it must make the technology more efficient It must use the technology not as a tool but to improve the functioning of the technology in some way, whether it's DDR or EnFish or McRow or anything else All of those cases improved the technology Everything, presumably that has come before the court and been invalidated or found unpatentable has no doubt made life more efficient, your honor but it doesn't make the technology more efficient And as to the specific state of the technology at the time, this court relied on no more than the statements made in column 2 of the patent There are, in particular, two patents there that talk about the remote transmission of parking information to portable devices In one instance, the portable device was in a car In another instance, it was a remote device and the nature of the device wasn't explained But the patent itself here provides all that the court needs to assess the status of the prior art And the patented issue So good inventions, even inventions that nobody thought of before and everybody really likes and thinks are great and makes their life easier still don't get to be patented If they take a longstanding human practice and implement it only with generic technology Yes, and that's the case here for the 391 and 786 patents unfortunately Let's not necessarily say that it was a longstanding practice to communicate information remotely about the status of a parking lot Yes, that's all information we always wanted, but let's just say for the moment, we never had it back in the 1990s So, I mean, this case is I mean another way of looking at the abstract idea is what I think Judge Hornak said, which is merely moving data or communicating information from point A to point B and that's an abstract idea and you could probably find support for that notion in our cases I guess what I'm wondering is what if the claimed invention was something a little more than that, what if it was a graphical user interface that actually displayed a color-coded diagram of a parking lot and then it showed you with colors specific spots in the lot that were actually open and so if it was far away in the deep recesses of the parking lot, you as the driver outside the parking lot, with your app, looking at your precisely where that spot is so you know you could just race like mad to get to that deep dark recess of the parking lot because you have this special map on your phone. Do you think that would be something that now is a little bit closer to the computer itself that it would be regarded as an inventive concept? No, Your Honor because in that, in your hypothetical what's happening is we're taking information and we're saying you're making life more efficient by communicating it remotely via a wireless link or in this instance as the patent says expressly by using the internet to communicate this information and in the same instance the long-standing human practice could have been looking back and looking at the parking lot with binoculars or waiting for the attendant to write lot full and know that one should move on as you drive down the block. The fact that the information is being transmitted even farther away than it was transmitted previously doesn't I'm talking about the actual display interface that this imagined invention would have which is now a clear identification of the location of a map through this constructed display system. In your hypothetical, Your Honor if it were to improve the display and the way the display worked in and of itself it might possibly be but if all it is doing is in accomplishing the fact of making a display this court has held on repeated occasions that inventions that include just a generic display do not make an invention patentable under Alice, most notably in the Affinity Labs and electric power group cases. If anything, the claims at issue here are more generic and describe a process, a longstanding human practice in a more abstract manner than the claims in electric power group for instance because there you had the real time transmission of electric utility data to a central processing station that processed it into something different and derivative of the original data and then displayed it whereas here all we have is the transmission of the data and the display and the patentees reliance on this is a technological invention, technological being in quotes doesn't make it patentable. The fact that we're dealing with real time data here doesn't make it patentable. That's the central holding of electric power group, Your Honor. Do you have anything further? No, Your Honor. I'll cede the rest of my time and encourage the court to uphold Judge Mr. Stein, you have a little bit of rebuttal time left. Your Honor, I only have a couple of points to make. There is no not only is there no evidence in the opinion of Judge Hornak that either the hardware which is identified as a handheld device, it could be item 160 in the patent and in claim 70 it's also specifically identified. EPG was four years later, there was no particular type of computer involved it used long-standing generic kinds of practices that have been around for a while and it did basically the same thing in my view as what was done in Alice. Our process was not long-standing at all in fact, the process that we have in our patent which is to say, receiving real-time data so that you can look at it and it tells you, lets you make a decision that was not any kind of long-standing practice at all certainly not for looking for parking you had to go to the lot and you had to look at a sign or some other evidence, some person as Judge Hornak said writing on a whiteboard six units, six spaces left the practice that is specified in our patent was not a long-standing practice we invented it and we think that the inventor and the company that is the owner of the patent is entitled to the benefit of that invention and we're asking the court to return this case to Judge Hornak for trial Thank both counsel, the case is taken under submission All rise The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m. ... ... ... ...